GEORGE W. SPAULDING *vs.* QUINCY AND BOSTON STREET
RAILWAY COMPANY.

Suffolk.    November 9, 10, 1903. — January 5, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & BRALEY, JJ.

*Negligence*, On street railway.

In an action against a street railway company for an injury incurred when alight-
ing from a car of the defendant, it appeared, that the accident occurred at six
o'clock on an afternoon in October, but that it was not very dark, that the car
having reached the destination of the plaintiff, some passengers got off and oth-
ers got on, and the trolley was reversed, that the plaintiff, becoming aware that
the car was about to go back, started out through the door to the front platform,
where the motorman then was, and stepped off the car, that as he stepped upon
the ground the car started suddenly and he fell, his foot being crushed by the
wheel of the car. *Held*, that, even if the plaintiff could have been found to be
in the exercise of due care, there was no evidence of negligence on the part of
the defendant, there being nothing to show that the conductor or the motorman
had any reason to suppose that the plaintiff was leaving the car when it was
started.

TORT for personal injuries alleged to have been caused by the
negligence of the servants of the defendant in starting an elec-
tric car of the defendant while the plaintiff was alighting from
it.    Writ dated May 19, 1899.

At the trial in the Superior Court *Sherman*, J. ordered a
verdict for the defendant; and the plaintiff alleged exceptions.

*J. E. Cotter*, (*T. F. McAnarney* with him,) for the plaintiff.

*H. F. Hurlburt*, (*D. E. Hall* with him,) for the defendant.

KNOWLTON, C. J.    On October 16, 1897, the plaintiff was
travelling from Taunton to Boston by the street cars, on his way
to Manchester, New Hampshire, for which place he intended to
take a train that would leave Boston at half past seven o'clock
in the evening.    Soon after he had passed Holbrook he inquired
of the conductor whether the electric car would reach Boston in
time to enable him to take that train, and was told that prob-
ably it would not, and that to reach the train it would be well
for him to leave the electric car and take a steam car, either at
Braintree or Quincy.    As the defendant's electric railway passes
the station of the steam railroad in Braintree, there is a branch

track leading from the main line, a distance of about two hundred and ten yards, to the station, and the car on which the plaintiff was riding left the main line and ran down this track to where the track terminated, and then ran back on the same track to the main line, and thence on to Quincy. After the car reached the terminus of the branch track at the station, some of the passengers alighted, the conductor carried the trolley around to the other end of the car, shutting off the lights in the car for a moment, and then put them on, other passengers got on the car, the car remained a sufficient time to enable any passengers who wished to alight or to get upon the car to do so easily, and the car then started back towards the main line. The plaintiff was sitting near the rear end of the car as it approached the station, and the forward end as it was about to go back. After seeing some of the passengers alight, and the conductor carry the trolley around from the rear of the car to the front, and after becoming aware that the car was about to go back, he started out through the door to the front platform where the motorman then was, and stepped off the car. It was nearly six o'clock, but not very dark, although there were lights in the car and near it outside. He testified that the car started suddenly just as he stepped upon the ground, and he fell, and his foot was crushed by the wheel of the car.

It is a grave question whether there was any evidence that he was in the exercise of due care. He had said nothing to the conductor or the motorman from the time when he made the inquiry in Holbrook. According to his testimony, he paid little attention to anything that was going on around him, he did nothing to obtain information in regard to the place where he was, or what were his surroundings, he gave no notice to any one of his desire or intention to alight, he was unable to give a clear account of how he stepped off, and he did not know whether there was a step on the car between the platform and the ground. It is not necessary to consider particularly the subject of the plaintiff's care, for we are of opinion that there was no evidence of negligence on the part of the defendant's servants. Although the plaintiff testified that the car started suddenly, there is nothing to indicate that the manner of starting it was unusual or dangerous. It is hardly possible to start a heavy electric car

so quickly as to cause a jerk at the instant of its first movement, and if it is possible, there is no evidence that it was done in this case. The plaintiff's fall seems to have been caused by his stepping to the ground while the car was moving, and not by its starting in any unusual way. Nor is there evidence that there was negligence in starting the car at that time. Neither the conductor nor the motorman had any reason to suppose that the plaintiff desired to get off. If the conductor saw him pass out of the door to the front platform where the motorman was, that did not show that he was intending then to leave the car, and the motorman, so far as appears, knew nothing of his movement. The time had come for the car to start back towards the main line on its way to Quincy, and it was proper for those in charge of it to start it. In the absence of evidence that they knew, or saw, or ought to have seen anything that should have prevented them from starting the car at that time, the jury would not have been warranted in finding that they were negligent.

*Exceptions overruled.*